3-12-907-Groate Petroleum Service, Inc. et al., P.A. v. The Travelers Indemnity Company et al., P.A. v. Ms. Stephen Scholl Mr. Huber Thank you, Mr. Honor. I'd also like to introduce Isaac Palunga, who is at Council Table, who has helped with our briefs in the case. Thank you for allowing me to argue the case. May it please the Court, I'm Brent Huber, here for John DeGroote and DeGroote Petroleum. I'd like to focus the Court on three essential issues. Number one, regardless whether the Court looks only to the complaint or the extrinsic evidence that's been presented, there's a duty to defend as a minimum in this case. The complaint is not limited to the Clemson spill, which occurred in 2009, and just a couple of months ago, the State has filed a motion in the liability case clarifying that. Point number two, the trial court should not have addressed the duty to identify. That's premature at this point. Point number three, the two exclusions that Traveler is relying on, exclusions P and Q, are not absolute, they don't purport to bar all coverage, and they're ambiguous. They must be construed in favor of coverage, and at a minimum, there's a duty to defend. And to say otherwise at this point, given the unusual situation in this case and all that has happened before the complaint was even filed, to say otherwise would make the duty to defend narrower than the duty to identify, which of course is improper. Before I get into the details, I'd like to make clear the relief that the DeGrootes are seeking. We ask that the court reverse an order Traveler is to defend, and here that would mean reimburse for all past defense costs and all future defense costs. In addition, our clients are asking that the court reverse on the duty to identify. What's at issue? From our client's standpoint, a lot is at issue. John DeGroote and DeGroote Petroleum operate a small family business. They're located just up the interstate in New Lenox. They purchased this property from Standard Oil in 1976. The company DeGroote Petroleum was formed in 1976. Their property is contaminated. There's no doubt about that. It's going to be very expensive to clean that up. The contamination is not limited to the Clems spill and the geographic areas on the site impacted by the Clems spill, but it's more widespread than that. This contamination is going to be expensive to address. Since the trial court's order and since the record was submitted to the court, there has been an important development specifically after the trial court's order. DeGrootes went to the trial court and said that in the liability case, the court should be stopped by the ruling in the coverage case that the complaint is limited to the Clems spill. In other words, DeGrootes were saying, okay, if the complaint really is that limited, then we'll clean up the Clems spill and the case will be over. The state opposed that motion and said, no, that's not what we're asking, and the trial court agreed with the state. So now we have a situation where in this case, the insurance company and the trial court are saying the complaint is limited to this Clems spill that happened in 2009. In the liability case, where it really matters, the state is free to argue that DeGroote must clean up all of the contamination on the site. Of course that's what the state wants, and that's what the complaint says. Here, travelers are saying just the opposite. Where is the allegation that any of this contamination occurred during the traveler's policy period? The allegations in the complaint are very broad. They don't say specifically when the contamination happened. In some places they say that the Clems spill happened in April of 2009. If I would refer the court to page 268 of the common law record, you go to paragraph 25 of count 3 of the complaint. There, the state's allegation is not limited in time at all. The state says DeGroote allowed spilling, leaking of fuel at the site. There's no temporal limitation whatsoever. So if the court takes that allegation and construes it in favor of coverage, broadly, as the court is supposed to do on the duty to defend, it's clear that there's a potential for coverage, and that's all that's required. So every insurer, I assume there was all different insurers over this period of years. There were other insurers, so is every insurer in there defending? No one is defending. In fact, at this point in time, DeGroote does not have a defense counsel. They can't afford it, and none of the carriers have provided a defense. So at this point in time, they have no defense counsel. They did at one time, but that counsel has been forced to withdraw. Even with this spill, the current spill? What's that? Even with the current spill, there's no coverage? They're not insured? No, they are not. And the current spill is really not the issue. Oh, I understand that. Yes, yes. Anyway, I digress just a bit. The bottom line is this is a very important day in the life of DeGroote Petroleum. They need this coverage. Let me turn to the duty to defend and my first point. Now, Traveler's argument, and we've touched on that a little bit already, is that the complaint is limited to the Clemson spill in 2009, and that's after the Traveler's policies. But that's not really what the complaint said. I pointed to that paragraph in count three, paragraph 25. Again, the site is 268 of the common law record. The allegation is not limited. There's an allegation that is very broad and says the complaint says that DeGroote allowed spillage, leakage of fuel at the site. There's no temporal limitation whatsoever. There are also other allegations. Page 273 of the common law record, paragraph 32 of the complaint, there's an allegation of releases occurring over time. Elsewhere in the complaint, there are allegations about this contamination happening historically as a reference to historic contamination. Looking at the complaint, it's clear that the state wants all the contamination cleaned up. That's what they're asking for in their prayer for relief. They certainly talk about the Clemson spill, which happened in 2009, but they are not simply asking for that contamination to be remediated. Of course, they're asking for all contamination to be remediated, and we don't know all of the sources of the contamination. Traveler's is also saying that the complaint is limited to diesel fuel. That's not correct either. What the complaint actually says, if you go to paragraph nine, page three of the complaint, again, that's 262 of the common law record, there's a reference to historical contamination. Contamination is a broad word. It could apply to petroleum or something else. It's certainly not limited to diesel fuel. In that key page, page three, the complaint explains what really happened here, that the reason the state came out to the site is that the Clemson spill occurred, and there was a notice given. Clem cleans up what it says was a spill, and when the point in time came to get confirmatory samples to say, all right, we've cleaned up our spill, they said they could not get confirmation samples that were clean because there's other contamination on the property. That's historical contamination that predated the Clemson spill, and travelers knew that. Back in January of 2008, the de Groots advised travelers of the contamination that had been found. During a refinancing effort, there was an environmental study. The study found contamination. Travelers received that information, said, well, we don't have any obligation to do anything because there hasn't been a lawsuit yet. And there's a long series of correspondence in the record, long before the state filed suit. But I guess what I'm wondering is, I mean, travelers had been off this risk for about 30 years before the 2009 spill, right? Yes, yes. And I don't know if it makes any difference, but I'm just wondering how travelers got picked out of the bag of other insurers that were in between them in 2009. Travelers was providing coverage starting in 1976 for a period of five or six years or so. They're the first insurance company on the risk. National Farmers was another carrier on the risk. That's in the record. You'll see that there was a settlement where that carrier actually sued the de Groots. The de Groots didn't sue NFU. But that policy had an absolute pollution exclusion. And the de Groots are not asking to sue over the absolute pollution exclusion. So there are some gaps in coverage. But the bottom line is, today, travelers is the only carrier to look to. So the complaint is not limited to diesel fuel. It's not limited to the Clems spill. And as required by the case law in this court's own decisions, the court should ask, is there a potential for coverage? And there is. There clearly is. There are also references in the complaint to petroleum, which could be diesel fuel, gasoline, fuel oil, anything else that de Groots were handling. There are also references to dead vegetation and stained soil. So the complaint is not as limited as the trial court found or as travelers has argued. And that's really all that's required. You don't need to go beyond the complaint to find that there's a duty to defend here. Of course, we presented evidence of this 1971 vandalism incident. That was discovered after the complaint was filed. Presented that evidence to the court. And in the Imperial Marble case decided by this court, Erie Insurance versus Imperial Marble, and others, the court recognized that it's appropriate to look to evidence outside the complaint. And really the rules that are developed about looking just to the complaint to decide if there's a duty to defend really assume that the complaint is the first thing that the insurance company gets. Here, that's not the case at all. We have correspondents in the record going all the way back to 2008 where the de Groots are again and again going to their insurance company, asking for coverage, presenting an environmental report that clearly shows there was contamination at this site long before the 2009 spill. Travelers knew that. That evidence was presented to the trial court. There's really no basis for the trial court to just disregard that. There may be other sources of contamination. We're not saying that's the only source. But in the record, based on the evidence, that's the only other source of contamination is that 1971 vandalism incident. Which, of course, happened before the de Groot Corporation was even formed. Now that historical contamination obviously creates a continuing damage under the continuous trigger cases in this state. All the policies are on the risk from the date of the first release. That's point number one. Let me turn quickly to point number two. What about the duty to indemnify? All we're saying here is that the de Groots never had the opportunity to brief that issue. Never had the opportunity to make any arguments about the duty to indemnify. The trial court had entered a scheduling order that said the parties were supposed to brief the duty to defend first. Duty to indemnify would come at another day when the court ruled on the cross motions. The court entered summary judgment against de Groot on both issues. Case was over, and now we're here. We would submit that that's improper. We've also cited the court to the case law. There's a very similar situation in Illinois Light Company versus Home. That's a 2004 Illinois Supreme Court case where the court said the duty to indemnify can't exist even if there isn't a duty to defend. Certainly the duty to defend is supposed to be broader than the duty to indemnify. I would submit in this case, given the unusual situation, we've got it backwards. But weren't they talking about situations where there are insurance policies where there is some insurance policies, there is no duty to defend? That's correct. They're indemnity-only policies. That's a very astute question, Your Honor. That's exactly what happened in the Illinois Light case where it was an excess policy, and that had ultimate net loss language in it. However, the ultimate net loss definition would include defense costs and indemnity costs. So certainly there's an issue of reimbursement for defense costs there. We also cited the court to the Keystone Consolidated case, 456 F. 3rd, 758, and the Sokol and Company versus Atlantic Mutual case, another Seventh Circuit case, where the court recognized that there can actually be a duty to indemnify even if there isn't a duty to defend. That's really a side issue. I just mention that because it's very clear and it illustrates that the duty to defend is supposed to be broader than the duty to indemnify. And here, with all respect to the trial court, it doesn't appear that the trial court viewed it that way. So all we're asking is that the grotes be allowed the opportunity to brief that issue when that time comes. And here, the liability case isn't even resolved yet. So we are talking about the duty to defend. Let me jump quickly to a very important topic, and that's topic number three, travelers' exclusions, P and Q. Again, this is a standard CGL policy. These exclusions do not purport to be absolute. They outline situations where there is coverage for pollution-related releases and situations where there aren't. And the way travelers has interpreted these exclusions, they would bar all coverage. Let me focus the court on the term body of water, which appears in both exclusions. Now, travelers is arguing that that refers to groundwater. But it doesn't say that. It doesn't say that. In environmental land, we have soil at the top. We have a vadose zone, which can include groundwater depending on the season. We have a saturated zone, which most people call groundwater. Below that, sometimes we have bedrock. At this site, we have bedrock. You can have soil, and you can have another aquifer. If travelers wanted to exclude coverage for releases to groundwater, it should have said so. It didn't say that. It said body of water. I would submit that that's ambiguous. I mean, if it's an aquifer, you know, maybe. But, I mean, in normal usage, we don't refer to wet dirt as a body of water, do we? Correct. And that's the point, Your Honor. And that's why that exclusion shouldn't apply. Travelers are saying it does apply. And the body of water includes groundwater. And I would submit that it doesn't. So, exclusion Q only applies to releases into bodies of water. And if travelers meant to say groundwater, it should have done so. At a minimum, there's a duty to defend. Not all the counts in the complaint even reference groundwater contamination. Some reference soil contamination. Some reference groundwater contamination. Let me move to exclusion P. This literally purports to apply to releases into something other than a body of water. If the court finds a body of water is ambiguous, that exclusion is ambiguous. Thank you. If the court has no questions, I'll sit down. Thank you. Thank you very much, Mr. Huber. Mr. Shulwof. Thank you, Your Honor. May it please the court, on behalf of the travelers insured. On April 24, 2009, 900 gallons of diesel fuel were spilled on DeGroote's property. That's why we are here. The EPA would later issue a notice of violation to DeGroote. And in 2011, after re-inspecting the site, filed the underlying lawsuit, which contained seven counts alleging that DeGroote violated the Illinois Environmental Protection Act. DeGroote seeks coverage from my client, who issued policies, as Mr. Huber said, from 1976 to 1980. Travelers correctly denied DeGroote's claim because, one, the policies at issue only respond to property damage, which occurs during the policy period. Second, the policies contain two unambiguous pollution exclusions, the first of which fires coverage for the discharge of petroleum, there's no dispute petroleum is at issue here, into any body of water. A second exclusion, Exclusion P, further supports the Circuit Court's ruling. The only Illinois case that has analyzed that exclusion, Fruit of the Loom, enforced it, forcing DeGroote in its papers to argue that this court must find both the Circuit Court and the First Appellate District to be wrong to obtain the reversal it seeks. In order for DeGroote to prevail in this appeal, it needs to demonstrate that all three bases for the Circuit Court's order were in error. While any one basis would support the Circuit Court's ruling, respectfully, we submit that it should be affirmed on all three bases. This appeal is about a 2009 diesel fuel spill that took place three decades after my client's last policy. DeGroote has approached this action as if it has always had a get-out-of-jail-free card. It's recent recollection of another spill that allegedly took place over 40 years ago. With this card, DeGroote argues that it can now tap the traveler's policies from the 70s to fund any defense and cleanup of subsequent unrelated polluting events. As an initial matter, there are serious evidentiary issues with the sole document that purports to memorialize the 71 spill. And in 2010, DeGroote affirmatively told travelers that it did not have any information regarding specific releases at the site, even though they had the document they're relying on already in their possession. That's at SC116, that representation by DeGroote. Regardless, to be clear, even if there was a 1971 spill, DeGroote's claim must fail for the simple reason that it is DeGroote and not the EPA that now asserts that its property has been contaminated for decades. Illinois law simply does not allow a policyholder to expand the basis of its liability beyond what was pled in the underlying action just to obtain insurance. What if the underlying complaint is amended? If the underlying... And refers to a 1971 spill or implies an earlier spill. I submit we can only rule on what's in front of this court. If the complaint were to be amended, they would then tender... I'm sure Mr. Huber would take a look at the actual words of an amended complaint, write to me and say, we now believe that this brings this claim within the scope of coverage. So if we affirm the trial court's decision, it would not be res judicata if another action was taken? Obviously, I can't speak for every permutation, but... Illinois law, as discussed in our briefs in more detail, fully acknowledges that we are a fact-pleading state, that the trial court was bound not to look at hypothetical possibilities but to the actual allegations. And we submit that the circuit court properly determined that the actual allegations here did not trigger coverage. If there was an amended complaint, we would have to take a look at it. Mr. Huber, in his opening remarks, said, oh, there's been recent events that took place after the trial court ruled, in which he says... shows that the EPA is seeking something much more than what Traveler said in our brief. Respectfully, we said, as you know, we filed a motion saying that, since those papers were not considered by the circuit court, they were not properly presented to this appellate court. But we did say, if your honors were going to entertain his invitation to take a look at those papers, take a look at the entirety of the briefing. In that brief, the EPA's initial brief said, we don't think it's appropriate for DeGroote to argue res judicata and collateral estoppel against us. Their main legal reason was that this case here is an insurance coverage dispute. It's a contract dispute between an insurer and a policyholder. It's not raising the issues that the EPA is bringing against DeGroote in that action. DeGroote responded by saying, well, you were nominally a party in this action. If Traveler's mischaracterized anything, you had an obligation to come forward. They were jumping up and down and begging to say, isn't this really about a 1971 spill? And respectfully, that's not what they're pointing to says. All the EPA is saying is, it's not legally within the doctrines of res judicata and collateral estoppel as you claim. Traveler's was on this risk from 76 to 80? 76 to 80. So why would a 71 spill change anything? Well... If they weren't on the risk when the pollution took place. I believe, and maybe that's a better ask to Mr. Huber, but I believe his argument would be that there was a 1971 spill. Apparently, it wasn't remediated properly. And for the last four decades, it's been continuously seeping further contamination such that there was property damage that took place between 76 and 80. Respectfully, if that's their theory of the case, that's barred by the pollution exclusion. The pollution exclusion that says, if they focus only on discharge, but the pollution exclusion also talks about seepage. If there's seepage taking place because an unremediated plume, and their theory is that the EPA's complaint, which we do not agree with, is saying that the 71 spill and an unremediated plume is what they're liable for, then there was a condition in violation of the law that seeped during our policy period. It's barred by an exclusion. Respectfully, we have significant differences with how they characterize what Illinois law is on the duty to defend. They state in their brief that the duty to defend does not hinge on what the complaint specifically alleges. That's simply untrue. Illinois law forbids speculation on what a complaint could have alleged. That's why we talked about, if there's an amended complaint, we need to take a look at the words of the amended complaint. But as it stands right now, the words of this complaint, respectfully, does not implicate any property damage that took place between 1976 and 1980. DeGroote relies on many cases where they say the draftsmanship of the plaintiff should not control. Respectfully, please take a look at the underlying complaint. It's a well-pled complaint conforming to Illinois fact-pleading rules. The attorney general is a sophisticated plaintiff who has filed hundreds of actions enforcing Illinois environmental laws. Respectfully, the reason the complaint doesn't mention a 71 spill, the reason the complaint doesn't mention any spills of gasoline, and the reason the complaint fails to lack, even generally, that there's been decades of property damage at the site, is not because there was attorney error. It's because the complaint's focus is simply not on anything that happened during my client's policy period. At paragraph 12, the complaint talks about an April 24th, 09 spill. Paragraphs 14 and 15 talk about inspections that evidence contamination of diesel fuel. 16 times the complaint talks about diesel fuel. It never talks about a gasoline spill. It never talks about any contamination at the site due to gasoline. Mr. Huber talked about that... It doesn't just specifically limit itself to April 24th. It says at least April 24th. And then it's for a plea throughout the pleading. And I think that's why some cases that we discuss in our brief apply to where we are in this situation. Illinois cases such as James and Adams, Lorenzo, and Ollie and Stunz all support the circuit court's ruling. These cases are significant because they involve, like here, specific allegations of an uncovered event. DeGroote would acknowledge the specific allegations of the 2009 spill doesn't implicate my client's policies. But they point to other general cases that talk about that the duty to defense standard is low or favored towards the policyholder. But none of those cases are like James Adams, Lorenzo, and Ollie and Stunz in which courts were faced with a specific allegation of an uncovered event and had to look at the totality of the complaint to determine whether there was coverage. In fact, in Lorenzo, the policyholder alleged on and prior to a specified uncovered incident could have meant that the negligent activity took place earlier and at a covered location. The appellate court found it reversible error to find a duty to defend focusing on the specifically pled uncovered event. The circuit court did not err in finding from at least in modifying the 2009 spill did not bring DeGroote's claim into coverage any more than the on and prior allegation did in Lorenzo. Respectfully, Ollie and Stunz involved violations of the Illinois Environmental Protection Act like here. The policyholder argued around and under modifying an uncovered property could have meant next door. Here, DeGroote is trying to convince you that on and prior to April 24, 2009 means not going back a day or a week. It means going back to 1971. Respectfully, Illinois law doesn't support that. Ollie and Stunz also like DeGroote unsuccessfully attempted to rely on an affidavit and an environmental report to demonstrate that its liability was greater than what was actually pled. The court's refusal to consider Ollie and Stunz's extraneous evidence underscores that Illinois adheres to the eight corners test. Precision Dose is a 2012 case that Travelers has relied upon consistently below and DeGroote has never even attempted to address it. Precision Dose knows that there is no requirement under Illinois law for the circuit court to have considered its extraneous evidence. And it cites another case they ignore, Shriver, for the proposition that information provided by a policyholder should be viewed with suspicion. The facts of this case are we did investigate this claim. We asked them for information and they never told us about their fire report. We filed a FOIA request to New Lenox and we were told they had no information. In fact, DeGroote, a year earlier, had filed a FOIA request and got the same result. In this factual circumstances, it was not error for the circuit court not to consider their evidence. And respectfully, the Envirodyne and the Holabird and Ruth cases that they cite do not change that. Moving quickly to the pollution exclusion, they say, clearly, groundwater is not any body of water. Mr. Huber said in environmental land there is this vadose zone and he described other complicated things related to groundwater. Well, anybody who fishes knows lakes have different thermal layers and the top part of a lake is called the epimelium. Well, just because there's a fancy scientific name for it doesn't mean that a lake is not any body of water. And respectfully, groundwater has always been defined by the state to be included in its definition of water. Both DeGroote and Traveler cite to the statute DeGroote argues that the statute demonstrates that there's differences between surface water and groundwater. I'll submit that. But an ocean has salt water and is large. A pond has fresh water and is small. They're different, but they are still bodies of water. There is another pollution exclusion, exclusion P. And I didn't hear any attempt to address the case that they acknowledge you have to decide has been incorrect for 17 years, the Fruit of the Loom case out of the First District. DeGroote acknowledges that the only way for it to prevail here is for this court to say that was wrongly decided. Fruit of the Loom found that we're an environmental regulatory agency, inspected the site, and issued notice of violations, the exclusion applied. The same result applies here where the EPA did all of these things and did one better. It filed the underlying complaint which each and every count says that DeGroote violated the Illinois Environmental Protection Act. That's what this exclusion is meant to exclude. Finally, I know I'm running out of time. There's a suggestion that the trial court did something wrong because DeGroote now wants a second bite at the apple. They want a hearing on the duty to indemnify. Justice Schmidt, your questions were spot on. The cases that they cite all have to do with a peculiar area in Illinois law where excess insurers without a duty to defend were saying, well, Laugham Hickey says the duty to defend is triggered by a suit. The duty to defend is broader than the duty to indemnify, so even though my policy doesn't say anything about a suit, I don't have a duty to indemnify in the absence of one. The court has never, based on the defenses at issue here, a pollution exclusion or a trigger, ever found that it's possible for a pollution exclusion to bar coverage for the duty to defend, but not for the duty to indemnify. And they say that we can't say with a straight face that we raised that in the court below. In the papers that they submit on this motion to strike their underlying defenses, they conceded that that happened. Thank you very much. Thank you, Mr. Schultz. And Mr. Huber, and Roberto. Yes, thank you, your honors. I would like to start with exclusions P and Q very briefly. I think we've already explained why exclusion Q does not apply, because a body of water does not mean groundwater. If travelers wanted to define it in that way, they should have done so. There is simply no support for that, and the fact that travelers is looking into the environmental statutes to try to define that term, is further evidence that it's ambiguous. The statutes don't say that a body of water is groundwater. For that reason alone, exclusion Q does not apply. We turn to exclusion P in the discussion about the Fruit of the Loom case and the Dingwell case. The Dingwell case thoroughly analyzes this exact exclusion as the Supreme Court of Maine. We are not saying the Fruit of the Loom case needs to be overturned or that its holding is incorrect. Its reasoning is overbroad. Let me explain. If you look at this exclusion P, the issue is does it result from a condition that violates the law? In other words, the exclusion applies when the release is caused by a violation of the law. The release is not into a body of water. That's when the exclusion would apply. Travelers want to say just the opposite, that the exclusion applies when a violation of law is caused by a release. That happens every time you have a release of petroleum. The release of the petroleum causes a violation and there's liability and you need coverage. If that's the reason for applying that exclusion, coverage is illusory. That exclusion would swallow up any type of pollution liability coverage. Again, this is not an absolute pollution exclusion. If you look at the Fruit of the Loom case, I would encourage you to read both cases, the Dingwell case and the Fruit of the Loom case. That's not really what they say. In the Fruit of the Loom case, you had a situation where there was a history of environmental citations prior to the release in question. Specifically, in 1981, there was an inspection that found a violation. Also, in 1983, there was an inspection and a notice of noncompliance. The issue there was that Universal had improperly stored PCB drums in the walls and that could have led to contamination and that was the reason for the citation. Sure enough, in this case, the violation then later led to contamination and liability. I would agree. In that situation, this exclusion should apply. But that's not what we have here. We have just the opposite situation where the release happens, that creates the liability, and you need coverage. In that scenario, the exclusion does not mean it's ambiguous. You do not need to disagree with the Fruit of the Loom court's holding. The reasons the court gave are a little broad. They definitely are and they would lead to illusory coverage. That is the first district decision. It's not binding on this court. If you look at the Dingwell case, it's very well reasoned and explains why that sort of interpretation would result in illusory coverage. I think regardless whether you look to the complaint only, as your Honor pointed out, at least by April of 2009 doesn't mean only April of 2009. Or whether you look to the 1971 spill, and keep in mind, we don't know what all the causes of the contamination are. There is a duty to defend at a minimum. And finally, Justice Schmidt asked a question I think goes to the trigger of coverage. I'd like to point the court to the Zurich v. Raymark case, the 1987 Illinois Supreme Court case about asbestos. Illinois Motor Sales v. Board of Pontiac GMC. That deals with the continuous trigger involving soil and groundwater contamination. That explains why this contamination, when it's released,  But the Illinois courts have said trigger coverage. So for those reasons, Your Honor, we would submit at a minimum, there's a duty to defend, and the decision below should be approached. Thank you. Thank you, Mr. Schubert, and thank you both for your argument today. We will take this matter under advisement. The bank should be at a written disposition within a short day. I will now take a recess for lunch. Bank at 150. Court is now at 10 to recess.